## Clara A. Gilbert, Formerly Clara A. Lukens, Appellant, *v.* The Erie Building Association.

*Stock—Transfer of stock—Pledge—Corporation.*

Where an owner of stock executes a power of attorney on the back of the certificate in the usual terms of such instruments, without any restrictions, qualifications or conditions, an innocent pledgee of the certificate from one who is in lawful possession of it holds it divested of all claims on the part of the owner.

Argued Jan. 20, 1898. Appeal, No. 346, Jan. T., 1897, by plaintiff, from judgment of C. P. No. 3, Phila. Co., March T., 1894, No. 1078, on verdict for defendant. Before GREEN, WILLIAMS, McCOLLUM, MITCHELL and DEAN, JJ. Affirmed.

Interpleader to determine the ownership of fifty shares of the Catawissa Railroad Company.

At the trial the evidence showed that about July 23, 1891, Joseph McDonald borrowed from Laughlin & McManus, stock brokers of Philadelphia, $700, for which he gave them his promissory note, and in order to provide collateral security therefor he obtained from his daughter, Clara A. Gilbert, who was the owner thereof, the certificate of stock in suit, with a blank

power of attorney attached thereto, said power being executed by Mrs. Gilbert and witnessed by her husband, E. D. Gilbert, which certificate and power of attorney McDonald delivered to Laughlin & McManus as security for his note. On September 22, 1892, while the loan to McDonald was still in continuance and unsettled, Laughlin & McManus borrowed for their own use from the Erie Building Association the sum of $5,000, and as security therefor delivered to the association the said certificate of stock and power of attorney, first adding to said power of attorney under the signature of Mrs. Gilbert, the words "signature guaranteed, Laughlin & McManus" together with twenty shares of stock of the Tradesmen's National Bank. The stock in question was never transferred from Mrs. Gilbert on the books of the Catawissa Railroad Company, and the representatives of the Building Association made no inquiry as to its ownership.

The following is a copy of said power of attorney:

"Know all men by these presents, That I, Clara A. Lukens, for value received, have bargained, sold, assigned and transferred, and by these presents do grant, bargain, sell, assign and transfer unto                              Fifty (50) shares of the Capital Stock of The Catawissa R. R. Co. standing in my name on the books of the Company and do hereby constitute and appoint                              my true and lawful attorney, irrevocable for me and in my name and stead but to use to sell, transfer and set over all or any part of the said Stock, and for that purpose to make and execute all necessary acts of assignment and transfer, and one or more persons to substitute with like full power, hereby ratifying and confirming all that                              said attorney or substitute or substitutes shall lawfully do by virtue hereof.

"In witness whereof I have hereunto set my hand and seal the 23rd day of July, 1891."

"Clara A. Lukens.      [Seal]

"Now Clara A. Gilbert.

"Signature guaranteed.

"Laughlin & McManus."

"Sealed and delivered in the presence of
     "E. D. Gilbert."

On April 17, 1893, Mrs. Gilbert notified the Catawissa Railroad Company of her claim to the said stock, and on February 4, 1895, and February 6, 1895, the Erie Building Association notified the Railroad Company of its claim thereto, whereupon the Railroad Company filed a bill in equity, out of which the feigned issue arose.

The court gave binding instructions for defendant.

Verdict and judgment for defendant. Plaintiff appealed.

*Error assigned* was in giving binding instructions for defendant.

*Elias P. Smithers*, with him *Samuel S. Craig*, for appellant.—It is submitted that in the present case the fact that the power of attorney was to sell and not to pledge was sufficient to have caused the defendant to have inquired as to the ownership of the stock: Wood's App., 92 Pa. 379; Ryman v. Gerlach, 153 Pa. 205; Leiper's App., 108 Pa. 377.

It is well settled in this state that a power to sell does not include a power to pledge; that letters of attorney are to be strictly interpreted, and the authority is never to be extended beyond that which is given in terms. A person who deals with an agent acting under a power of attorney deals at his peril if the authority is exceeded: Strohecker v. Farmers' Bank, 6 Watts, 99; Heffernan v. Addams, 7 Watts, 120; Devinney v. Reynolds, 1 W. & S. 333; Baring v. Peirce, 5 W. & S. 551; Campbell v. Foster Home Assn., 163 Pa. 632.

Another circumstance that should have put the officer of the building association upon inquiry is that Laughlin & McManus put upon the power of attorney under Mrs. Gilbert's name the words "signature guaranteed, Laughlin & McManus."

Again, Laughlin & McManus, who were brokers, in borrowing from defendants, a building association, were acting out of the usual course of their business: Burton's App., 93 Pa. 214.

*E. Hunn Hanson*, with him *C. T. Quin*, for appellee.—A certificate of stock accompanied by a power of attorney to transfer is in the hands of the holder presumptive evidence of ownership—an ownership in nowise differing from the real and actual one, and therefore justifying, not only a sale, but any lesser dis-

position, by one who is a bona fide holder for value, and without notice of an interfering equity: Holbrook v. N. J. Zinc Co., 57 N. Y. 616; Prall v. Tilt, 28 N. J. Eq. 479; Wood's App., 92 Pa. 379.

PER CURIAM, February 7, 1898:

The power of attorney on the back of the certificate signed by the plaintiff was in the usual general terms of such instruments, and contained no restrictions, qualifications or conditions. It contained a full power of sale, and certainly authorized a sale of the certificate by any attorney who had it in his lawful custody. The defendant was an innocent pledgee of the certificate, and was perfectly at liberty to advance money upon it, and take it as collateral, divested of all claims on the part of the owner. Under all the authorities a transfer executed in such circumstances confers a good title upon the person buying it or advancing money upon it.

Judgment affirmed.