SHAFER et al. v. SPRUKS et al.

(Circuit Court of Appeals, Third Circuit. October 26, 1915.)

Nos. 1944, 1945.

1. CORPORATIONS ⬡⟹478—CONSTRUCTION OF MORTGAGE—RECITALS IN BONDS.

A recital, in mortgage bonds of a corporation, that the mortgage "covers all real estate, machinery, fixtures, and equipment of every description now owned or hereafter acquired" by the corporation, *held* limited by the terms of the mortgage itself, which recited that the bonds were secured by the company's real estate in a certain county, and described and conveyed such real estate, together with the buildings, machinery, appurtenances, etc., "thereunto" belonging.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1871; Dec. Dig. ⬡⟹478; Mortgages, Cent. Dig. § 211.]

2. PLEDGES ⬡⟹56—CORPORATE BONDS—SALE—RIGHTS OF BONDHOLDERS—PURCHASE BY PLEDGEE.

A pledgee of corporate bonds, which in accordance with the terms of the pledge sold and bought them in, thereby acquired the full title, with whatever rights the pledgor might have against the property of the corporation.

[Ed. Note.—For other cases, see Pledges, Cent. Dig. §§ 152–183; Dec. Dig. ⬡⟹56.]

Appeals from the District Court of the United States for the Middle District of Pennsylvania; Chas. B. Witmer, Judge.

Suit in equity by David Spruks, receiver of the Lackawanna Dairy Company, against H. C. Shafer, trustee, and the Scranton Savings & Dime Bank. Heard on cross-appeals by the Scranton Bank and by intervening creditors. Modified and affirmed.

See, also, 225 Fed. 480, —— C. C. A. ——.

Samuel B. Price, Cole B. Price, and John H. Price, all of Scranton, Pa., for appellants.

W. W. Watson and W. S. Diehl, both of Scranton, Pa., for appellee.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

⬡⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

McPHERSON, Circuit Judge. In order to understand the controversy now in hand, we must go back to the suit that was decided by this court in March, 1913, but was only recently reported in 225 Fed. at page 480, —— C. C. A. ——. By reference to that opinion it will be seen that in effect the mortgage then and now in question was adjudged to be an equitable lien on the after-acquired land, and indeed there is no dispute now on that subject. The land was in Wyoming county, and the mortgage was recorded there only; but the dairy company was the owner of personal property also both in Wyoming county and in the neighboring county of Lackawanna—machinery, fixtures, supplies, cash, etc.—and in the present proceeding the Scranton Bank, claiming to have an equitable lien on this property, or on its proceeds, superior to the claims of general creditors, filed a bill to establish such lien and for other purposes. The claim was allowed in part and disallowed in part, the result being that the bank and the general creditors have each taken an appeal.

[1] Essentially the bank's position depends on the scope of the recital in the bonds that the mortgage "covers all real estate, machinery, fixtures, and equipment of every description now owned or hereafter acquired by the said Lackawanna Dairy Company, and all its franchises, rights, and privileges." The bank insists that the meaning of these words is so inclusive as to embrace all the dairy company's property, of every kind and wherever situated, and to create an equitable lien thereon superior in time and rank to the claims of the general creditors. As we understand, all of their debts postdate the bonds. The fundamental question is: What property does the quoted language embrace? In our opinion its scope is not so extensive as the bank contends. The words do not stand by themselves, and are not to be construed merely according to their dictionary meaning; they were used in the course of a transaction that included a mortgage also, to which, indeed, the bonds expressly refer. The writings must be read together and in the light of the surrounding circumstances, and, thus considered, we think it quite clear that the dairy company had no intention to incumber, and did not incumber, legally or equitably, any other property than the real estate in Wyoming county and such personal property as might properly be regarded as part of such realty or incident thereto. The mortgage says so distinctly. In reciting the bonds it declares that they were to be secured on the company's—

"real estate * * * in Nicholson, county of Wyoming, * * * together with all and singular the buildings, machinery, fixtures, and franchises incident and appurtenant *thereto* * * *."

And in the granting clause of the mortgage the dairy company grants, bargains, etc., a specific tract of land—

"together with all and singular the buildings, improvements, ways, waters, water courses, rights, liberties, privileges, fixtures, machinery, tools, easements, franchises, hereditaments, and appurtenances whatsoever *thereunto* belonging or in any wise appertaining, and the reversions and remainders, rents, issues, and profits thereof, and all the estate, right, title, interest, property, claim, and demand whatsoever, of the said the Lackawanna Dairy

Company in law, equity or otherwise howsoever of, *in and to the same and every part thereof*, except as hereinbefore excepted and reserved."

The habendum clause is in the usual form, and follows the same line of thought:

"To have and to hold all and singular *the said* lands, buildings, tools, fixtures, easements, and franchises, hereditaments, and premises, hereby granted or mentioned, or intended so to be, with the appurtenances, unto the said J. D. Runyon, his heirs and assigns, in trust for the use, benefit, and security of such person or persons, body or bodies politic or corporate, as shall become the holders of said bonds, or any of them, subject, however to the rights of the Lackawanna Dairy Company, its successors and assigns, to have, possess, manage, use, enjoy, and control *the said* lands, buildings, machinery, fixtures, tools, easements, and franchises and privileges, with as full, free, and perfect a right to use, enjoy, and make profit of the same, and every part and parcel thereof, unless and until default shall be made in the payment of the debt hereby secured as hereinafter specified, as if this indenture had not been made, and subject also to the right of the said the Lackawanna Dairy Company, its successors and assigns, to alter, repair, replace, or improve *said* buildings, machinery, fixtures, and tools, or any portion thereof."

In view of all these provisions taken together we cannot sustain the bank's contention that the dairy company, in using the language quoted from the bond, created an equitable lien in 1899 on all its property, real and personal, of every description (including even money in bank), whether situated in Wyoming county or elsewhere, and that this lien attached to all such property afterwards acquired, and was superior to the claims of general creditors against the property or its proceeds. We do not think it necessary to appeal to the long-established policy of the Pennsylvania law that forbids secret liens on personal property; we rest our decision on the construction of the bonds and mortgage, which in our opinion do no more than create a lien on the real estate in Wyoming county, and on such machinery, fixtures, and equipment as were properly incident to the operation of the plant and business there carried on. The personal property in Scranton, Lackawanna county, was not incumbered either by the bonds or by the mortgage.

The decree should be modified, therefore, so as to deny the bank a lien on any other personal property than the machinery, etc., in Wyoming county that was incident to the plant and business conducted on the two parcels of real estate covered by the legal or equitable lien of the mortgage.

[2] As the real estate is not sufficient to satisfy this lien, the remaining question is: On what basis is the bank entitled to share as a general creditor in the proceeds of the personal property? As already stated, all the bonds amounting to $20,000 were transferred to L. A. Lange in part payment of his claim against the dairy company. The master and the District Court have found that the mortgage cannot be successfully attacked in this proceeding, and that Lange's title to the bonds has not been impeached. It follows that the bank also took a good title when Lange pledged the bonds as security for a loan made by the bank to him as an individual. This loan, with certain interest thereon, is about $9,400, and the general creditors seek

to fix this as the highest limit of the bank's claim. But the bank has ceased to be the pledgee, and is now the owner, of the bonds. Under the powers contained in Lange's collateral note, the bank offered the bonds for sale in July, 1912, and bought them in; the sale having been regular and bona fide in all respects, as the master and the District Court have found. By this sale Lange's full title as owner was acquired by the bank, with whatever rights he himself might have asserted against the property of his debtor. We agree, therefore, that the bank is not now to be restricted to the amount of its claim on Lange's note, but has the rights of an owner. Camden Bank v. Fries-Breslin Co., 214 Pa. 395, 63 Atl. 1022; Colonial Trust Co. v. Central Trust Co., 243 Pa. 268, 90 Atl. 189.

In all respects, except as indicated in the foregoing opinion, the decree is affirmed; but on the appeal of the intervening creditors we reverse so much of it as conflicts with what we have said, and direct the District Court to modify it, in accordance with this opinion.