STEBBINS et al. v. LENA LUMBER CO. et al.

No. 12684—Opinion Filed Sept. 26, 1922.

Rehearing Denied May 8, 1923.

(Syllabus.)

1. **Evidence—Parol Evidence—Written Contract.**

Parol evidence is not admissible to vary or add to the terms of an unambiguous written contract in the absence of accident, fraud, or mistake.

2. **Contracts—Modification—Statutory Provision.**

Under section 988, of Revised Laws 1910, a contract in writing may be altered by a contract in writing or by an executed oral agreement and not otherwise.

3. **Evidence—Parol Evidence Varying Written Lease.**

In an action of the lessee against the lessor, where it appears from the evidence that the lessee obligated himself under the terms of a written lease to make certain improvements upon the lease, such lessee cannot relieve himself of his obligation to make the improvements, as provided for in the written lease, by establishing a contemporaneous or subsequent collateral oral agreement that the lessors would assist such lessee in making the improvements provided for in the lease contract, in the absence of fraud, accident, or mistake.

4. **Equity—Contracts—Modification.**

A court of equity, in the absence of fraud, accident, or mistake, cannot change the terms of a contract. Equity has no jurisdiction to enforce a void contract.

Error from District Court, Tulsa County; Owen Owen, Judge.

Action by the Lena Lumber Company against O. W. Edwards et al., and action by O. W. Edwards and another against Grant C. Stebbins and others, consolidated. Judgment for the Lena Lumber Company and others, and Stebbins and others bring error. Judgment affirmed in part; reversed in part. Cause remanded, with directions.

Biddison & Campbell, for plaintiffs in error.

West, Sherman, Davidson & Moore, for defendants in error Oscar W. Edwards and Edwards Building Company.

KENNAMER, J. On the 8th day of October 1918, the Lena Lumber Company instituted an action in the district court of Tulsa county against O. W. Edwards et al. to foreclose its lien for lumber furnished to Edwards, the cause being No. 8052.

On the 17th day of May, 1919, subsequent to the institution of action No. 8052, O. W. Edwards and the Edwards Building Company, a corporation, plaintiffs, commenced an action in the district court of Tulsa county against Grant C. Stebbins, Oscar K. Eysenbach, and Frank C. Giddings, defendants, No. 9185.

The plaintiff, O. W. Edwards, in cause No. 9185 prayed the judgment of the court decreeing him to be the equitable owner of a certain leasehold estate in certain lots described in his petition, in the city of Tulsa, and for damages in the sum of $145,123.75, and that the action be consolidated with action No. 8052. On the 20th day of June, 1919, the court consolidated actions No. 8052 and No. 9185.

On January 2, 1920, the court made an order appointing Hon. John Devereux referee of the consolidated cases and referred the issues of fact to said referee; directing that the referee take evidence, reduce

the same to writing, make his findings of fact, and with his conclusions of law thereon report the same to the court. On the 23rd day of August, 1920, the referee filed his report and conclusions of law with the court.

On the 5th day of April, 1921, the trial court entered judgment approving the report of the referee. The court by this decree established certain liens of various lien claimants against the improvements on the leasehold estate; decreed the Edwards Building Company to have title to the 99 year lease in controversy; entered judgment in favor of the Edwards Building Company for $10,000 against Grant C. Stebbins, due on subscription to stock; $7,500 against Oscar K. Eysenbach, amount due on subscription to stock; denied Stebbins, Eysenbach, and Giddings a cancellation of the lease and decreed that Stebbins, Eysenbach, and Giddings were not entitled to any rent upon the leased premises; dismissed the claim of the plaintiff, Edwards, for damages without prejudice, and enjoined Giddings, Stebbins, and Eysenbach from doing any further act to cloud the title of the Edwards Building Company to the 99 year leasehold upon the property.

The motion for new trial of the defendants, Giddings, Stebbins, and Eysenbach, was overruled and this appeal is prosecuted to reverse the judgment of the trial court. Numerous errors are assigned as grounds for reversal.

A brief summary of the facts necessary for consideration in determining this cause is, in substance, as follows: On the 24th day of September, 1917, Grant C. Stebbins, Oscar K. Eysenbach, and Frank C. Giddings, as lessors, entered into a 99 year lease contract in writing with O. W. Edwards, lessee. The lessors by the terms of this lease contract leased certain parts of business lots located in the city of Tulsa and described in the lease for a period of 99 years. By the terms of the lease the lessee agreed to pay the lessor as rental for said premises during the whole term the sum of $18,000 per annum payable in quarterly installments of $4,500 each in advance, on the first days of October, January, April, and July, of each year. The lessee agreed to construct upon the leased premises a substantial building. The lease contract as to the kind of building to be constructed contained the following provisions:

"Third. The lessee further covenants and agrees with the lessors, their heirs and assigns, that he will construct and erect complete upon said premises a good, substantial building at least two stories in height and to cost not less than one hundred thousand and no-100 ($100,000.00) dollars, in accordance with all the laws and ordinances that are or may be applicable thereto and in force at the time of the erection of the said building; and in accordance with all building rules or regulations of any building department having jurisdiction over the said premises; and conformable to all requirements of any insurance board or body necessary or proper to make said building a first class risk, which said building shall be fully completed, ready for occupancy and free from mechanic's liens, materialmen's liens, claims, charges or other liens or unpaid bills, capable of being made liens, not later than the first day of January, A. D. 1919."

The lease provided that the lessee had the right to assign, transfer, mortgage, and convey the leasehold estate created by the lease. The lease contained a provision requiring the lessee to keep the building insured in some reliable insurance company. The provision of the lease in respect to a forfeiture or termination of the same reads as follows:

"Eighth. And it is further understood, covenanted and agreed by and between the parties hereto that in case at any time, default shall be made by the lessee, in payment of any of the rent herein provided for upon the day the same becomes due or payable; or in case any default in relation to liens as hereinbefore provided shall continue thirty (30) days after written notice, or if the lessee shall fail to pay any of the rates, taxes or assessments herein provided for to be paid by him within the time herein provided for, or in case of the sale or forfeiture of said demised premises, or any part thereof, during said demised term, for the nonpayment of any tax, rate or assessment, or in case the lessee shall fail to keep insured any building or buildings or improvements which may at any time hereafter be upon said premises, or fail to apply insurance money as herein provided for, or fail to rebuild as herein provided, or he shall fail in keeping and performing any of the covenants of this lease by him to be kept or performed, then in any or either of such events it shall and may be lawful for the lessors at their election, at or after the expiration of thirty (30) days' previous notice in writing from the lessors to declare said demised term ended and to re-enter said demised premises, and the buildings and improvements situated thereon, or any part thereof, either with or without process of law, the said lessee hereby waiving any demand for possession of the demised premises and any and all buildings and improvements

situated thereon, and the lessee covenants and agrees. that upon the termination of said demised term at such election of said lessors, or in any other way, he, the lessee, will surrender and deliver up said above described premises and property peaceably to said lessors, their agents, or attorneys, immediately upon the termination of said demised term; and if said lessee, his agents, attorneys and tenants shall hold possession of the said premises or any part thereof one day after the same should be surrendered according to the terms of this lease, he shall be deemed guilty of forcible detainer of said premises, and shall be subject to eviction and removal, forcibly or otherwise, with or without process of law.

"Ninth. It is further covenanted and agreed by and between the parties hereto, that in the event of the determination of this lease at any time before the regular expiration of said demised term of ninety-nine (99) years, for the breach by the lessee of any of the covenants herein contained, by him to be kept and performed, then, in such case, all buildings. fixtures and improvements then situated on said demised premises shall be forfeited to said lessors and become their absolute property."

The fourteenth paragraph of the lease provided:

"And it is further agreed as a condition of this lease that in every case where, in the opinion of the lessors or under the conditions of this lease, it shall be deemed necessary for the interest of the lessors to serve notice or demand on the lessee concerning this lease; or any of the conditions or provisions thereof, it shall be a sufficient service of such notice, demand or declaration to mail the same, with postage prepaid at Tulsa, Oklahoma, in an envelope addressed to Oscar W. Edwards, his executor, administrator, heirs, or assignees of the leasehold estate hereby demised, at Tulsa, Oklahoma."

The lease contract in plain and definite language clearly provided for the respective obligations assumed by the parties to the contract.

It appears from the record that the lessee, Edwards, took possession of the leased property and commenced the erection of the building which he had agreed to build, and continued with the construction of the building until about the first of June, 1918, when the work was suspended because Edwards was no longer able to finance the construction of the building.

Upon a review of the facts in this case, it is obvious that the controlling question decisive of this appeal is whether or not the lessors in the lease contract are entitled to a forfeiture of the lease. An analysis of the position of Edwards, the lessee, makes it clear that his whole defense against the contention of the lessors for a forfeiture, rests upon his right to vary, contradict, or add to the term of an unambiguous written contract by the introduction of evidence of an alleged contemporaneous or subsequent oral contract.

Counsel for Edwards insist that the lessors orally agreed at the time and prior to the execution of the written lease that in the event the lessee decided to build a more expensive building than that stipulated in the lease, the lessors would aid him financially in the erection of such building. It is also insisted that the lessee went to Giddings, one of the lessors, after the work had commenced on the building, and subsequent to the execution of the lease, and submitted plans prepared by the architect of the lessee for the construction of a larger building than was contemplated by the terms of the written lease, and that Giddings, for himself and his co-owners of the fee of the leased premises, agreed that they would execute a real estate mortgage upon the fee of the leased premises in order to assist the lessee in raising available funds for the construction of the building.

We are unable to concur in the contention of the counsel for Edwards, that any of the allegations of his petition as to the oral promises and evidence in support thereof of the lessors constitute any defense to the right of the lessors to terminate the lease contract, either in law or in equity.

Counsel for Edwards argue that it is well settled in this jurisdiction that a collateral contract entered into at the time, or subsequent thereto, which is not in derogation of the written contract, may rest in parol and may be established by parol testimony; that a contract partly in parol and partly in writing may be established and enforced if not repugnant to each other, and cite the following authorities to support the rule contended for: Holmes v. Evans, 29 Okla. 373, 118 Pac. 144; Smith v. Bond, 56 Okla. 112, 155 Pac. 1116; Mackin v. Darrow Music Co., 69 Oklahoma, 169 Pac. 497; Jesse French Piano & Organ Co. v. Bodovitz, 73 Oklahoma, 174 Pac. 765.

The rule contended for is sound where the facts justify its application. Just as in the case of Jesse French Piano & Organ Co. v. Bodovitz, supra, where the action was

one instituted to recover upon a number of promissory notes executed in settlement of the purchase price of a piano purchased by the defendant in the action. It was contended by the plaintiff that the trial court committed error in permitting the defendant to testify over the objections to the fact that an oral warranty of the piano was made at the time the notes were executed in settlement of the purchase price of the piano. It was argued by the plaintiff that such testimony was not admissible to vary or contradict the terms of the notes sued on in the action. The court correctly held, in this situation, that the contention of the plaintiff was not well taken, and that the rule as to oral testimony being inadmissible to vary or contradict the terms of a written contract had no application, for the reason the contract of sale entered into at the time the notes were executed was not in writing, but the contract of sale by which the piano was sold to the defendant was an oral contract. That the notes were not evidence of the contract of sale made at the time of the execution of the notes. It is obvious, under the facts of the case, the defendant had a right to show a partial or total failure of consideration of the notes by reason of a breach of warranty under the terms of the contract of sale, which was oral and not in writing.

Commissioner Galbraith in the opinion distinguished the facts in the case from the facts in the case of Colonial Jewelry Co. v. Bridges, 43 Okla. 813, 144 Pac. 577, where this court announced the rule.

"In the absence of accident, fraud, or mistake of fact, parol evidence is not admissible to vary the terms plainly expressed in a written contract."

We are unable to conceive of any case that falls more fairly within the rule as announced in Colonial Jewelry Co. v. Bridges, supra, and repeatedly followed by this court than the instant case. See Ozark States Trust Co. v. Winkler, 84 Okla. 7, 202 Pac. 12, for a review of the authorities on the inadmissibility of parol testimony to vary the terms of a written contract.

The contention of Edwards in substance is that, although the written lease contract is clear and definite in its terms and provisions, by which he agreed to construct a substantial building upon the leased premises at a cost of not less than $100,000, he should be relieved of this solemn obligation by reason of the vague and indefinite oral promises made prior, contemporaneous with, and subsequent to the execution of

the written contract that the lessor would aid him financially in fulfilling his obligation in respect to the construction of the building. If there existed any doubt that this contention is untenable, sections 942 and 988 of Revised Laws 1910, which read as follows, appear to us to be conclusive that the contention cannot be sustained:

"988. A contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise."

Under section 988 of the statute, supra, conceding everything that the defendant in error Edwards claims to be true as to the oral promises of the lessors, by which it is insisted that the lessors were to aid the lessee, Edwards, in a financial way in constructing a building upon the leased premises, such evidence wholly fails to establish a legal, binding contract, which may be upheld, that in any way modifies the obligation assumed by Edwards under the lease contract, for no contention is made that such oral promises or agreement was ever executed. By the oral evidence introduced to establish the oral promises of the lessors to assist Edwards, the lessee, in constructing the building to be built upon the leased premises, it is apparent that this is an attempt on the part of the lessee, Edwards, to show that the lessors were obligated to assist in making the improvement provided for in the lease. It would have been an easy matter to include in the lease contract a provision that the lessors were to aid the lessee in raising the necessary funds to build the building as provided for in the written lease, had it been the intention of the lessors to obligate themselves to assist in raising the necessary funds to make the improvement provided for in the contract. No such provision having been included in the written contract, the lessee will not be permitted to escape performing his contractual obligation by establishing a collateral parol agreement inconsistent with the terms of the written lease. Hardin v. Kirby, 25 Okla. 479, 106 Pac. 837; Wodock v. Robinson (Pa.) 24 Atl. 73.

In Ramsey v. Wilkie, 13 N. Y. Supp. 555, the court said:

"Where there is an express covenant by the tenant to keep the demised premises in repair, there can be no independent collateral oral undertaking on the part of the landlord, by which he, and not the tenant, is to perform the covenant."

It is our conclusion from an examination of the record in this cause that the respect-

ive rights of the lessors and the lessee must be determined by the terms of the written lease contract, and there appearing to be no fraud or mistake on the part of the parties in the execution of the contract, that the parties are bound by the terms contained therein.

It appears that the trial court in this cause decreed the title of the lease contract to be in the Edwards Building Company, a corporation, which was organized by Edwards and the lessor with a view of enabling Edwards to raise sufficient funds to complete the building upon the leased premises.

This company was organized April 8, 1918, and it appears that Edwards executed a formal assignment of the 99 year lease to the Edwards Building Company, but the assignment was never actually delivered to any of the officers of said company, but was retained by Edwards. The lessors subscribed for 250 shares of stock of said corporation at par-value of $100 each. Giddings subscribed for 50 shares at $100 each and paid in full therefor; Stebbins and Eysenbach for 100 shares each at the par value of $100, which they never paid for.

The petition filed by the plaintiff, Edwards, in cause No. 9185 discloses that he joined the corporation as a coplaintiff with him and asked the court to decree the title to the lease to be in him as against the corporation; that no relief was sought for by any of the parties to the actions in favor of the corporation. The plaintiffs in error here, Stebbins, Eysenbach and Giddings, insist that the lease contract was never delivered to the corporation and that the title of the lease was still in Edwards, and sought its termination. The plaintiffs in error contend that the organization of the Edwards corporation was never completed by adopting by-laws and the election of officers; therefore, never had a corporate existence such as would authorize it to enter into any kind of contract or transact any business. We deem it unnecessary to decide this question. As we view the facts in the case, under the terms and provisions of the lease contract, without regard as to who owns the lease, it should be terminated for failure of the lessee, or his assigns, to fulfill the obligations of the lease with respect to the payment of rent or the construction of the building provided for therein. It is obvious from the record that the whole controversy presented by this appeal is one between the original lessors and lessee, and that they are the only parties interested in the Edwards Company corporation; that on the date of the institution of these actions the record title of the lease was in Edwards.

The decree of the trial court denying the lessors the right to terminate the lease for nonpayment of rent was entered upon the theory that two of the lessors, Stebbins and Eysenbach, had subscribed for stock in the Edwards Company corporation, which they had not paid for. We are unable to conceive of any injury that resulted to Edwards in the organization of the corporation. He had obtained on stock subscription from the lessors the sum of $7,500, but having failed to sell any stock to any person other than the lessors, he was unable to obtain sufficient funds to complete the building upon the leased premises, which he had obligated himself to build under the terms of the written lease.

It is plain from the record that the scheme of raising funds sufficient to construct the building by selling stock in the corporation was at least abandoned by the parties. Whatever the lessors may have done to aid the lessee to obtain funds with which to construct the building was at most the performance of a gratuitous duty not assumed by them under the terms of the written lease, and there being no subsequent legal and binding contract entered into between the parties modifying or changing the terms of the written lease, we are unable to conceive of any tenable theory upon which the lessors should be denied the right to terminate the lease, or wherein they forfeited their right to collect the rent as provided for in the lease contract.

Counsel for the defendant, Edwards, contend that, although, as a matter of course, there is ground for termination of the lease, upon the ground of equity the court should not permit its termination. That the doing of exact justice between the parties being the purpose of a court of equity, it will not do to say that its power to grant relief can be circumscribed by any technical rule. See Roberts v. Lutzke (Ind.) 78 N. E. 635.

It is true that the primary purpose of a court of equity is to administer equity and do exact justice to the parties involved in a controversy, but the Supreme Court of the United States, in the case of Hedges v. Dixon, 150 U. S. 182, 37 L. Ed. 1044, held:

"A court of equity, in the absence of fraud, accident, or mistake, cannot change the terms of a contract.

"Where a contract is void at law for want of power to make it, a court of equity has no jurisdiction to enforce such contract, or in the absence of fraud, accident,

or mistake, to so modify it as to make it legal and then enforce it.

"Where the transaction, or the contract, is declared void because not in compliance with express statutory or constitutional provision, a court of equity cannot interpose to give validity to such transaction or contract, or any part thereof."

It is a maxim of equity that "equity follows the law."

The Supreme Court of the United States, in the case of Magniac v. Thomson, 15 How. 299, said:

"That wherever the rights of the situation of parties are clearly defined and established by law, equity has no power to change or unsettle these rights, or that situation, but in all such instances the maxim equitas sequitur legem is strictly applicable."

In the case of Colonial Trust Company v. Central Trust Company et al. (Pa.) 90 Atl. 189, it was held:

"A chancellor cannot grant equitable relief, however strong an appeal may be made to his conscience, where the one from whom such relief must come will be deprived of a legal right."

We, therefore, conclude that the decree, in so far as it established the liens of the various lienholders, should be affirmed. That the decree denying the plaintiffs in error the rent due under the lease contract, the right to terminate the lease, and the decree in favor of the Edwards Company corporation for money due on stock subscription is reversed.

The cause is remanded to the district court of Tulsa county. with directions to take an accounting as to the amount of rent due the lessors on the lease contract and enter judgment against Edwards therefor; ascertain the value of the building, which was being constructed on the leased premises, and enter judgment in favor of the plaintiffs in error, terminating and canceling the lease upon the condition that the plaintiffs in error pay into court the ascertained value of the building, or so much thereof as will be sufficient to discharge the claims of the lienholders. If the value of the building exceeds the claims of the lienholders, the excess be credited on the rent due by Edwards to the lessors; but if the value of said building be less than the aggregate amount of such lien, then the amount paid into court be prorated to such lienholders.

KANE, JOHNSON, McNEILL, MILLER, ELTING, and NICHOLSON, JJ., concur.