## LESTER v. MID–SOUTH OIL CO.

(Circuit Court of Appeals, Sixth Circuit.   March 14, 1924.)

No. 3946.

1. Mines and minerals ⊜⟶78(1)—Lease held not to terminate, where well com-
menced on last day of term.

An ·oil and gas lease for five years, providing in the development clause
that the lease should terminate "if no well be commenced" on or before
certain semiannual dates, "unless" rentals were paid, *held* not to expire.
where a well was commenced on the last day of the term of the lease, and
was thereafter pushed to completion and production; the lease being
ambiguous as regarded termination, thus requiring the development
clause to be harmonized with the term clause.

2. Time ⊜⟶11—Oil well could be commenced on last day provided.

Under oil and gas lease, providing that it should terminate unless a
well was commenced on or before April 8th, the lessee had the entire day
stated to commence a well.

Appeal from the District Court of the United States for the Eastern
District of Kentucky; Andrew M. J. Cochran, Judge.

Suit by Ira Lester against the Mid-South Oil Company. Decree for
defendant, and plaintiff appeals. Affirmed.

John L. Smith, of Catlettsburg, Ky. (Howes & Howes, of Paints-
ville, Ky., and Martin & Smith, of Catlettsburg, Ky., on the brief), for
appellant.

F. C. Malin, of Ashland, Ky. (Prichard & Malin, of Ashland, Ky.,
and Kirk, Kirk & Wells, of Paintsville, Ky., on the brief), for appellee.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

KNAPPEN, Circuit Judge. Appeal from an order dismissing plain-
tiff's suit to have an oil and gas .lease adjudged null and void. By
writing dated April 9, 1917, appellant leased to one Darby 100 acres of
land in Johnson county, Ky., for the sole purpose of drilling and oper-
ating for oil and gas, with attendant rights and privileges, at a royalty
of one-eighth of the oil produced, and $100 annually for each well
yielding gas only.

The term clause provided that the lease should remain in force "for
a term of five years from this date, and as long thereafter as oil or gas,

or either of them, is produced from said land by the lessee." The development clause provided that, if no well be commenced on or before the 9th day of April, 1918, the lease should terminate as to both parties, unless the lessee on or before that date should pay or tender to the lessor (or to his credit in a certain bank) the sum of $25, which should operate as a rental to cover the privilege of deferring the commencement of a well for six months from that date. It further provided that "in like manner and upon like payments or tenders the commencement of a well may be further deferred for like period of the same number of months successively." The rentals of $25 were duly paid by the lessee each six months in advance, the last payment, made October 9, 1921, extending the time for commencing a well to the end of the full five-year term. On December 6, 1921, while the lease was admittedly still alive, it was assigned by Darby to the appellee, who, on April 8, 1922, over the lessor's protest, began a well, which was completed and gas found about April 22, 1922. Appellant began suit April 15, 1922, on the contention that the lease expired on April 8, 1922, for the reason that no gas or oil had been produced.[1]

[1, 2] Appellee contends that, under the lease in suit, the process of development, going on at the close of the five-year period (prosecuted with reasonable diligence and dispatch) and resulting in production, extended the five-year term; and such was, in effect, the view taken by the District Court. Appellant contends that the lease expired on April 8, 1922, at the end of the term period, because no gas or oil had then been produced. It was presumably then apparent that production could not be accomplished on that date.

Had the term clause stood alone—that is to say, if the development clause were to be ignored—the lease would expire in five years from its date, unless oil or gas was actually produced within that time. Guffey v. Smith, 237 U. S. 101, 116, 35 Sup. Ct. 526, 59 L. Ed. 856; Union Gas & Oil Co. v. Adkins (C. C. A. 6) 278 Fed. 854, 856, and cases there cited. But the term clause did not stand alone. The provision in the development clause that the lease should terminate "if no well be commenced" on or before April 8, 1918—considered in connection with the "unless" clause, and in view of the payments thereunder—means, as applied to the facts of this case, that the lease should terminate unless a well be commenced on or before April 8, 1922. As respects the time

---

[1] By answer and counterclaim appellee alleged that its assignment was duly recorded December 10, 1921; that immediately after it acquired the lease it in good faith undertook development, and as soon as possible contracted for the drilling, which was begun as soon as the condition of the roads permitted the moving of drilling machinery upon the land, this well producing gas in paying quantities and costing appellee $2,331; thereafter another well was drilled by appellee at a cost of $2,445, which was also productive; that the development has progressed as rapidly as possible since it began, and that appellee purposed to make full development, and would have continued to drill further wells, but for the institution of this suit; that it has also drilled seven wells on two other tracts owned by appellant, since acquiring such other two leases (apparently less than two years before the instant suit was begun). Appellant did not join issue on the facts so asserted, but moved to strike out the answer and counterclaim; that motion being argued with appellee's motion to dismiss plaintiff's petition, the latter motion being granted.

the lease should terminate, the development clause was thus on its face inconsistent with the term clause, so creating an ambiguity between the two clauses. In these circumstances a question of intent arises. Neither clause can primarily be assumed to dominate the other; neither can primarily be ignored. Both must be considered together, and effect given to each. Hopkins v. Zeigler (C. C. A. 6) 259 Fed. 43, 47, 170 C. C. A. 43.

It is impossible, in the judgment of a majority of the court, to give effect to the development clause, or to harmonize it with the term clause, except by interpreting it as so modifying the term clause as to make the lease terminate unless the lessee should, on or before April 8, 1922, have completed a well then producing oil or gas—in which case the lease should further continue so long as oil or gas should be produced—or unless the lessee should, on or before the end of April 8, 1922, in good faith commence a well and by reasonable diligence and dispatch complete it as a producing well in paying quantities, in which latter case, also, the lease should continue so long as such production continued. This construction does not make the term clause yield to the development clause, but gives due force and effect to each. Under that clause appellee had the entire of that day to commence a well. Ringle v. Quigg, 74 Kan. 581, 591, 87 Pac. 724; Henderson v. Ferrell, 183 Pa. 547, 553, 38 Atl. 1018. In neither pleadings nor briefs in this case is it contended that the well was not begun on April 8, 1922, nor that it was not completed with reasonable dispatch, nor that it did not produce in paying quantities.

A majority of the court is thus unable to assent to appellant's contention that appellee could have the benefit of the development provision only by commencing a well soon enough to enable its completion before (or by) April 8, 1922. This view would in effect emasculate the development provision. We see no force in the suggestion that the term and development clauses do not refer to each other. Not only are they in close proximity, but the fact that the development clause is the latest expression on the subject of termination entitles it to additional consideration. Nor do we see any force in the proposition that Hopkins v. Zeigler, supra, fails of application because the lease in that case was an "or" lease, while that in the instant case is of the "unless" character. The contentions that the doctrine of Hopkins v. Zeigler does not apply to an "unless" lease, and that the development and payment of royalties is the real consideration for the execution of an oil and gas lease (if thereby it is intended to deny mutuality or lack of consideration in the "unless" feature of the development clause[2]), are sufficiently answered by Guffey v. Smith, supra, 237 U. S. at page 116, 35 Sup.

[2] The lease recites a consideration of "one dollar and other valuable consideration in hand paid, receipt of which is hereby acknowledged and of the covenants and agreements hereinafter contained on the part of the lessee to be paid, kept and performed," and declares that "it is understood and agreed that the consideration first recited herein, the down payment, covers not only the privileges granted to the date when said first rental is payable as aforesaid, but also the lessee's option of extending that period as aforesaid, and any and all other rights conferred."

Ct. 526, 59 L. Ed. 856, in connection with the decisions of this court in Leeper v. Neely, 293 Fed. 967, 969, and Miller v. Oil Co., 295 Fed. 27, decided January 8, 1924. We may refer, also, to Monfort v. Lanyon, 67 Kan. 310, 72 Pac. 784, and So. Penn. Oil Co. v. Snodgrass, 71 W. Va. 438, 76 S. E. 961, 43 L. R. A. (N. S.) 848.

It follows that appellee had the entire of April 8, 1922, in which to commence drilling, that appellant's protest thereto was unavailing, and that plaintiff's petition was rightly dismissed.

The decree of the District Court is affirmed.