## Simpson et al. v. Buckner's Adm'r et al.

(Decided Feb. 3, 1933.)

E. B. ANDERSON for appellants.
SANDIDGE & SANDIDGE for appellees.

OPINION OF THE COURT BY HOBSON, COMMISSIONER—
Affirming.

Appellant J. P. Simpson is the owner in fee simple
of a tract of 90 acres of land in Ohio county.  On April
23, 1929, he executed to Buckner, La Rue, and Buckner
an oil and gas lease covering this land.  By the first
clause of the writing the lessor in consideration of $1
cash in hand paid, and "of the covenants and agree-
ments hereinafter contained," granted to the lessees
the land for the sole purpose of mining and operating
for oil, gas, etc.  Then follow these provisions:

"It is agreed that this lease shall remain in
force for a term of one year from this date, and as
long thereafter as oil or gas, or either of them is
produced from said land by the lessee.

"In consideration of the premises the said
lessee covenants and agrees:

"1st.  To deliver to the credit of said lessor
free of cost, in the pipe line to which he may con-
nect his wells, the equal one-eighth part of all oil
and gas produced and saved from the said leased
premises. * * *

"3rd.  To commence drilling well on said land
within six months from date as above written in
this agreement, or this lease shall terminate as to
both parties, unless the lessee on or before that
date shall pay or tender the lessor, or to the les-
sor's credit in the Central Trust Co., Owensboro,
Ky. or its successors, which shall continue as the
depository regardless of changes in the ownership
of said land, the sum of $90.00 in advance which
shall operate as a rental and cover the privilege of
deferring the commencement of a well for twelve
months from date.  In like manner and upon like
payment or tenders the commencement of a well
may be further deferred for like period of the same
number of months successively and it is understood
and agreed that the consideration first recited
herein, the down payment, covers not only the
privileges granted to the date when said first rental
is payable as aforesaid, but also the lessee option
of extending that period aforesaid, and any and all
other rights conferred.

"Should the first well drilled on above described land be a dry hole, then in that event, if a second well is not commenced on said land within twelve months from the expiration of the last rental period which rental has been paid, this lease shall terminate as to both parties."

The lessees paid Simpson the $1 and also paid him $90 in advance to cover the privilege of deferring the commencement of a well for the second six months, and before that period expired paid him $90 more covering the third six months. Before the second six months had expired on April 15, 1930, they began to put down a well on the land but had not struck oil or gas by the 23d. On the 24th of April, 1930, Simpson executed a similar lease to J. C. Ellis, and Ellis then moved a rig upon the premises and began to put down a well. Thereupon the lessees in the first suit brought an action to enjoin Ellis from operating on the land. He and Simpson then filed a suit against them to enjoin them from operating on the land. The two cases were heard together, and on final hearing the circuit court entered judgment in favor of the lessees in the first lease. Simpson and Ellis appeal.

It is earnestly insisted that by the terms of the lease it was to remain in force "for a term of one year from this date, and as long thereafter as oil or gas, or either of them are produced from said land by the lessee," and that as no oil or gas had been produced within the year the lease terminated. A similar question was before the United States District Court for the Eastern District of Kentucky in Lester v. Mid-South Oil Company.

Judgment was there given in favor of the first lease, and on appeal to the United States Circuit Court of Appeals the judgment was affirmed. The court said:

"Had the term clause stood alone—that is to say, if the development clause were to be ignored—the lease would expire in five years from its date unless oil or gas was actually produced within that time. Guffey v. Smith, 237 U. S. 101, 116, 35 S. Ct. 526, 59 L. Ed. 856; Union Gas & Oil Co. v. Adkins (C. C. A. 6) 278 F. 854, 856, and cases there cited. But the term clause did not stand alone. The provision in the development clause that the lease

should terminate 'if no well be commenced' on or before April 8, 1918—considered in connection with the 'unless' clause, and in view of the payments thereunder—means, as applied to the facts of this case, that the lease should terminate unless a well be commenced on or before April 8, 1922. As respects the time the lease should terminate, the development clause was thus on its face inconsistent with the term clause, so creating an ambiguity between the two clauses. In these circumstances a question of intent arises. Neither clause can primarily be assumed to dominate the other; neither can primarily be ignored. Both must be considered together, and effect given to each. Hopkins v. Zeigler (C.C.A. 6) 259 F. 43, 47, 170 C. C. A. 43.'' Lester v. Mid-South Oil Co., 296 F. 661, 662.

While there is a conflict of authority on the question here presented, our well-settled rule is this:

''The cardinal rule governing courts in the interpretation of contracts is to ascertain the intention of the parties thereto and give effect to that intention; but the intention to which this rule applies is the one to be gathered from the words which the parties employ in stating their contract, and not to any unexpressed or mental intention which they may have entertained but which they did not express, and, in arriving at the intention which the terms employed import and manifest, the entire contract should be looked to.'' Siler v. White Star Coal Co., 190 Ky. 10, 226 S. W. 102, 104.

The intention of the parties is to be determined from the whole contract giving every part proper effect, and if the intention of the parties can be ascertained from reading the instrument as a whole, it will be effectuated as the true contract. Chicago Veneer Co. v. Anderson, 105 S. W. 108, 32 Ky. Law Rep. 7; Muncey Coal Co. v. Muncey, 206 Ky. 638, 268 S. W. 293; Sower v. Lillard, 207 Ky. 283, 269 S. W. 330; Stanley v. Slone, 216 Ky. 114, 287 S. W. 360; City of Owensboro v. Dark Tobacco, etc., Ass'n, 222 Ky. 164, 300 S. W. 350; Jones v. Riddell, 224 Ky. 245, 5 S. W. (2d) 1077.

It will be observed that though it is provided in the lease that the term of the lease shall be for one year, and as long as gas or oil is produced, it is further provided that the lessees must commence a well within six

months or pay the lessor $90, and that this payment shall "cover the privilege of deferring the commencement of a well for twelve months from date." There would be no reason for deferring the commencement of a well for "twelve months from date" if the lease expired in twelve months from date, unless oil or gas had been produced. Not only so, but if the parties meant this why did they add the next clause providing that "in like manner and upon like payment the commencement of a well may be further deferred for like period of same number of months successively." This provision clearly shows that the parties did not mean to limit the term to one year, for these words are added:

"And it is understood and agreed that the consideration first recited herein, the down payment, covers not only the privileges granted to the date when said first rental is payable as aforesaid, but also the lessee's option of extending that period aforesaid, and any and all other rights conferred."

The consideration is recited in the first clause of the lease, and a part of it is "the covenants and agreements hereinafter contained." By the words quoted the contract expressly covers all the rights so conferred on the lessees. Not only so, but the next clause provides that if the first well is a dry hole, the contract shall terminate if a second well is not commenced within twelve months from the expiration of the last rental period for which payment has been made. There was no need of this provision if it was contemplated by the parties that the lease should terminate in one year, unless at that time oil or gas was produced. The plain purpose of these provisions was to secure the development of the land for oil and gas, and the correct understanding of the contract requires that they be read together.

The contract read as a whole clearly sustains the construction placed upon it by the circuit court.

Judgment affirmed.