**HICKS et al. v. MID-KANSAS OIL & GAS CO. et al.**

No. 26916.   Feb. 8, 1938.

Neal E. McNeill, for plaintiffs in error.

Mills & Cohen, for defendants in error.

RILEY, J. Plaintiffs in error, as plaintiffs below, owners of legal and equitable estate in 20 acres of land in Okfuskee county, Okla., sought cancellation of an oil and gas lease upon the land and for other relief.

The lease was executed January 19, 1929, by F. E. Oliver to W. G. Goodwin. Thereafter lessor Oliver died and by mesne conveyances various plaintiffs acquired their interest in the land. Goodwin, lessee, transferred title in the lease to Transcontinental Oil Company, and by merger the Mid-Kansas Oil & Gas Company became owner of the lease, and in 1933, by assignment, Helmerich & Payne acquired the principal interest, and on January 13, 1934, Helmerich & Payne began operations and "spudded in" on January 18, 1934; with due diligence operations were continued until gas in paying quantities was produced March 22, 1934. There was no production prior to January 19, 1934.

The lease contract is such as is known as producer's 88 form, providing that the lease "shall remain in force for a term of five years from this date, and as long thereafter as oil or gas, or either of them is produced from such land by the lessee."

And further providing that:

"If no well be commenced on said land on or before the 19th day of January, 1930, this lease shall terminate as to both parties, unless the lessee on or before that date shall pay or tender to the lessor, * * * the sum of $20"

—for deferring commencement of a well for 12 months; with like provision for deferring commencement of a well for a like number of months successively.

Defendants by joint answer plead that within the fixed term of the lease they commenced a well and had the right to complete it after the five-year period and to maintain the lease contract as long as oil or gas was produced in paying quantities under the law of this state, on which they relied as a rule of property in the expenditure made by them.

Plaintiffs replied by delineating what is termed a history of the development of the producer's 88 form of lease, together with like delineation of a producer's 88 special T. O. P. form of lease. The latter specifically

provides for completion of a well commenced within the fixed exploration period.

Plaintiffs further plead that the original lessor discussed the two forms of lease with the original lessee, refused to execute the latter lease contract, but did under such consideration execute the former, understanding in the agreement that production must be obtained prior to termination of the exploratory period of five years, otherwise the lease would expire.

At the trial plaintiffs sought a continuance on the ground of the absence of J. R. Autry, a party plaintiff, who was temporarily absent from the state, having gone to Kansas City on business and who informed C. W. Hicks, agent for other plaintiffs, a few days before trial that he would be present to testify, and they relied upon the statement. Amongst other things, Autry would testify that he discussed with W. G. Goodwin, lessee, who approached him and F. E. Oliver for the lease, the effect of the two forms of lease contract; that he, Goodwin, Oliver, and Autry mutually understood that the form of lease executed would expire January 19, 1934, unless production had been obtained. The application was overruled.

Depositions of Benjamin Harvey Olds and W. F. McMechan were offered and rejected. These depositions were directed to the custom and usage in the vicinity with respect to the two forms of lease contracts.

W. M. McLennan, an attorney, was produced as a witness and from him such evidence was offered and rejected.

The court sustained a demurrer to plaintiffs' evidence and judgment was rendered for defendants, from which plaintiffs appeal.

It is contended that the habendum clause of the lease contract governs the duration of the lease, and that the five-year term therein provided is not modified by the drilling clause contained in the said lease.

This assignment of error is governed by the decisions of this court to the contrary in Simons v. McDaniel, 154 Okla. 168, 7 P. (2d) 419, and Champlin Refg. Co. v. Magnolia Pet. Co., 178 Okla. 203, 62 P. (2d) 249.

The defendants Helmerich & Payne plead, and, undoubtedly by their action in expenditure of money and effort in developing the lease, were depending upon the former decision as a rule of property, for prior to such development this court held as to such a lease contract that lessee had the right at any time within the exploratory period to commence a well, in which event there was the right with due diligence to complete the same.

In the latter cause it was pointed out that prior to the former decision this court had not had occasion to determine the identical proposition.

It is true in the latter case mention was made of **"ambiguous, if not conflicting, provisions contained in the lease."**

In Prowant v. Sealy, 77 Okla. 244, 187 P. 235, the ambiguity arose by reason of the habendum clause, wherein these words were used, "and as much longer thereafter as oil or gas is found therein; or said premises developed; or operated." It was held that the drilling clause "is clear and unambiguous. * * *" The rule therein stated was, "where a written contract is complete in itself and the same, viewed in its entirety, is unambiguous, its language is the only legitimate evidence of what the parties intended by it; the intention of the parties is to be gathered solely from the words used. * * *"

In Lester v. Mid-South Oil Co., 296 Fed. 661 (C. C. A. 6th) it was held:

"An oil and gas lease for five years providing in the development clause that the lease should terminate 'if no well be commenced' on or before certain semi-annual dates 'unless' rentals were paid, held not to expire where a well was commenced on the last day of the term of the lease, and was thereafter pushed to completion and production; **the lease being ambiguous as regards termination, thus requiring the development clause to be harmonized with the term clause."**

The ambiguity there considered was one wherein

"The whole of a contract is to be taken together so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others"

—(Code cited in Prowant v. Sealy, supra), and not such an ambiguity as requires resort to parol evidence.

Sections 9462, 9463, 9465, O. S. 1931, provide in substance that a contract must be interpreted so as to give effect to the mutual intention of the parties at the time of contracting, and in so doing the language of the contract governs if it is clear and does not involve an absurdity, and the intention of the parties to a written contract is to be ascertained from the writing **alone,** if possible, and the whole of the contract is to be considered for this purpose.

Even in case doubt is cast upon intention or meaning of expression used in a clause of a contract, it is not always necessary to resort to parol evidence, despite the fact that section 9471, O. S. 1931, recognizes in some instances the desirability of ascertainment of circumstances under which the contract was executed.

In Anthis v. Sullivan Oil & Gas Co., 83 Okla. 86, 203 P. 187, we held:

"The law presumes that parties understood the import of their contracts, and they intended that which its terms manifest, as stated in 6 R. C. L. 835, as follows:

" * * * It is not within the function of the judiciary to look outside of the instrument to get at the intention of the parties, and then carry out that intention regardless of whether the instrument contained language sufficient to express it; **but their sole duty is to find out what is meant by the language of the instrument.'**

" * * * The judicial function of a court of law is to enforce a contract as it is written.' Kupfersmith v. Delaware Ins Co., 84 N. J. L. 271, 86 Atl. 399, 45 L. R. A. (N. S.) 847, Ann. Cas. 1914C, 1172."

The reason for the rule of law heretofore stated is found in the general principle that parol evidence cannot be received to add to, detract from, vary, or contradict a written contract. West v. Kelly's Executors, 19 Ala. 353, 54 Am. Dec. 192, 70 A. L. R. 752, note. The execution of a written contract is deemed to supersede all oral negotiations concerning terms and subject matter, thus rendering parol proof inadmissible in the absence of accident, fraud, or mistake of fact. 10 R. C. L. pp. 1016-1017.

A mistake of law arises from a complete knowledge of facts upon which is based erroneous conclusion as to legal effect. It is usually remediless. Page v. Provines et al., 179 Okla. 391, 66 P. (2d) 7.

Parol or extrinsic evidence must not contradict or be inconsistent with the writing. 70 A. L. R. supra; Stebbins et al. v. Lena Lbr. Co., 89 Okla. 244, 214 P. 918.

The doctrine is that where the lease is not silent as regards a matter to which an alleged oral agreement relates, evidence of the latter is inadmissible to vary the terms of the written lease. Stonemor Realty Co. v. Beyda, 206 App. Div. 476, 201 N. Y. S. 418.

In Powell v. John E. Hughes Orphanage, 148 Va. 331, 138 S. E. 637, where defendant was the lessee named in the lease, but it was contended that not he but a corporation was agreed to be bound, it was held it was wholly immaterial what the parties "originally intended," since the written agreement became the sole memorial of their agreement, the law conclusively presumed this and would hear nothing to the contrary. 88 A. L. R. 1400.

In Bray v. Woodley, 162 Ark. 186, 258 S. W. 119, where time was the essence of the contract providing an oil and gas lease and termination of the lease contract if no well be commenced on the land on or before a day certain, it was held the term time provided could not be varied or contradicted by parol testimony offered by the lessee.

Herein the proffered testimony would show that lessors and lessee discussed two different lease forms. They rejected the one that was definite and certain as to its term. They adopted the one wherein the habendum clause first fixed a five-year period of duration, then continued it indefinitely dependent upon production, subsequently within the four corners of the instrument to terminate the lease period at the expiration of one year in event "no well be commenced" or payment made, and providing as to annual payments that when made, commencement of a well would be deferred 12 months successively, thus affirmatively granting unto the lessee the right to commence a well the very last day of the exploration period. This last right being ostensibly considered by the parties a valuable right and in the interest of production, the object of the contract, it was held that the subsequent clause meant what it said (in the negative), to the effect that if a well was commenced within the exploration period, the lease continued in force and effect, subject, of course, to future termination for nonproduction. The rejected form of lease made certain that which required judicial construction in the adopted form both prior to and subsequent to the date of execution of the lease contract, and after repeated construction, sustained such lease contracts in consideration of all employed terms; the plaintiffs interested in a contrary construction would show by parol evidence a contrary intention and seek to prove an alleged custom and usage in the community to support it, and this the plaintiffs cannot do, for in respect to the duration of the lease upon which offered proof of both intent and custom bear, the lease contract is not silent. Van Ness v. Pacard, 2 Pet. (U. S.) 137; Keogh v. Daniell, 12 Wis. 164. There is no vacuum to be filled. Robinson v. Odom, 35 Ga. App. 262, 133 S. E. 53; Pryor v. Ludden & B. So. Music House, 134 Ga. 288, 28 L. R. A. (N. S.) 267, 67 S. E. 654.

64

The test of the completeness of the writing is the writing itself. Thompson v. Libby, 34 Minn. 374, 26 N. W. 1; Naumberg v. Young, 44 N. J. L. 331, 43 Am. Rep. 380.

Thus, where, from an inspection of the instrument, it appears that the writing was intended to evidence and express the full and complete intention of the parties, parol evidence is inadmissible to show some other contract which would modify the one evidenced by the writing. Ruppert v. Singhi, 243 N. Y. 156, 153 N. E. 33; Barfield v. Farkas, 40 Ga. App. 559, 150 S. E. 600.

Undoubtedly the parties to the lease in question intended and did make the writing the repository of their final understanding. Seitz v. Brewers' Refrigerating Mach. Co., 141 U. S. 510, 35 L. Ed. 837, 12 S. Ct. 46. Such being the case, the evidence dehors the writing is contradictory and inadmissible under the view that a particular matter being dealt with in the written contract, it will be presumed to contain the entire agreement of the parties on this subject. Loveland v. Epstein Drug Co., 227 Mass. 311, 116 N. E. 570.

It cannot be assumed that the whole of the written contract was designed as an imperfect expression of the parties' agreement (Naumberg v. Young, 44 N. J. L. 331, 43 Am. Rep. 380), for here the contract on its face discloses specific, detailed stipulations concerning the duration of the lease. The agreement sought to be disclosed by parol proof was not separate or collateral, it was the essence of the contract. The result is that the written words used so clearly express intention that a party will not now be heard to delineate the contrary. So to do would be to permit the evil which the rule was designed to prevent, to create incompleteness and supply the omission by the vagaries of parol proof, to reason in a circle (70 A. L. R. 754, footnote 6), and avoid the safeguard of written instruments.

Corpus Juris, vol. 22, p. 1179, sec. 1571, states that it is the duty of courts "to declare the meaning of what is written in the instrument, not of what was intended to be written." Spring v. Major, 126 Okla. 150, 259 P. 125.

Fraud is not relied upon herein, neither is reformation sought on the ground of mutual mistake of fact. The several stipulations must be construed together so as to secure consistency. The intention of the parties is a question of law for the court and that intention is to be derived, if possible, from the written words of the contract in question. Cherokee O. & G. Co. v. Lucky Leaf Oil & Gas Co., 116 Okla. 121, 242 P. 214; Withington v. Gypsy Oil Co., 68 Okla. 138, 172 P. 634.

The term clause did not stand alone. Had it done so, the lease would have expired by its terms in the absence of production, but the term clause was modified by the development clause providing **"if no well be commenced on said land on or before the 19th day of January, 1930, this lease shall terminate as to both parties."**

That clause, considered in connection with the "unless" clause following, and the term clause preceding it, means in plain and unambiguous language that the term clause is modified to the extent that in event, on or before the expiration of the five-year exploration period of time provided, a well is commenced, the lease does not terminate, subject, of course, to subsequent failure for nonproduction or nondevelopment. Lester v Mid-South Oil Co., 296 Fed. 661.

Thus we conclude that the habendum clause does not within itself fix the duration of the lease, and when considered with the development clause, there is no such ambiguity as to require resort to parol evidence, consequently no error occurred in rejecting such evidence nor in denying a continuance because of absence of a witness, a party plaintiff who would testify as indicated. Judgment affirmed.

OSBORN, C. J., BAYLESS, V. C. J., and WELCH, PHELPS, CORN, GIBSON, and DAVISON, JJ., concur.

HURST, J., dissents.