**W. A. MONCRIEF, Jr. and Joe J. Klabzuba, Appellants,**

v.

**PASOTEX PETROLEUM COMPANY, a Delaware corporation, Appellee.**

No. 6239.

United States Court of Appeals
Tenth Circuit.

May 17, 1960.

Rehearing Denied Aug. 11, 1960.

Second Petition for Rehearing Denied
Aug. 30, 1960.

Dee J. Kelly, Fort Worth, Tex., and T. Murray Robinson, of Robinson, Shipp, Robertson & Barnes, Oklahoma City, Okl., for appellants.

George N. Otey, Ardmore, Okl. (R. Rhys Evans, Ardmore, Okl., and C. W. Proctor, Houston, Tex., T. N. Jordan, Jr., Denver, Colo., and Otey, Johnson & Evans, Ardmore, Okl., of counsel, on the brief), for appellee.

Before BRATTON, PICKETT and LEWIS, Circuit Judges.

LEWIS, Circuit Judge.

The dispositive question presented by this appeal is whether or not, under undisputed facts, the lessee of an oil and gas lease on restricted Oklahoma Indian lands has complied with the lease requirements so as to extend the lease beyond its primary term. Appellee-defendant is the lessee under the subject lease, one approved by the Department of Interior for Rosa Drake McCann, an enrolled full-blooded Choctaw Indian. Appellants-plaintiffs assert claim to the lands through a subsequent lease executed by the daughter and heir of the original allottee.[1]

The departmental lease, dated May 13, 1948, and approved by the Secretary of the Interior on June 10, 1948, is "for a term of 10 years from and after the approval hereof by the Secretary of the Interior and as much longer thereafter as oil and/or gas is produced in paying quantities from said land." By other

---

1. The daughter, Mrs. Chadwick, is a party to this action though not named in the caption. The named parties are each considered as original lessees though some take by assignment.

provisions in the lease, the lessee is required to pay periodically a cash rental; is required to drill and produce all wells necessary to offset or protect the leased land from drainage, or in lieu thereof to compensate the lessor in full for the estimated loss of royalty through drainage; is required at its election to drill and produce other wells, or in the event of its election not to drill and produce such other wells, to pay in lieu thereof a sum to be fixed by the Secretary of the Interior not to exceed $1.00 per acre per annum; is required to pay a royalty of $12\frac{1}{2}$ per cent of the oil or gas, or both, produced and saved from the premises; is required to abide by and conform to any and all regulations of the Secretary of the Interior relative to such lease; and is required to comply with restrictions imposed by the Secretary as to the time or times for the drilling of wells and as to the production from any well or wells drilled when in his judgment such action may be necessary or proper.

By order dated March 6, 1958, the Oklahoma Corporation Commission designated the leased lands as part of a drilling unit consisting of a total of 320 acres and this order received the requisite approval of the Secretary of the Interior upon March 31, 1958. The drilling unit included a tract upon which appellee had begun drilling in 1957 and upon which production in paying quantities was discovered on June 4, 1958. Development was continued with due diligence and the well was completed as a commercial producer at a date not later than June 21, 1958.[2]

Each of appellants' contentions urging reversal spring as corollaries from their basic premise that the departmental lease required the completion of a commercial well during the primary term and that commencement of such a development during the primary term did not serve to extend the lessees' rights. To explore the soundness of the premise, the drilling and production requirements of the lease must be examined in view of Oklahoma law as it has been pronounced. And Oklahoma has consistently favored such interpretation of lease rights as will favor development and permit completion of a well rightfully commenced. Simons v. McDaniel, 154 Okl. 168, 7 P.2d 419, 421.

■ The departmental lease contains no specific provision requiring completion of a commercial well during the primary term and voiding the lease absent such completion. Cf. State ex rel. Commissioners of Land Office v. Carter Oil Company of West Virginia, Okl.1959, 336 P. 2d 1086. Nor does it have a delay rental, well completion, or continuous drilling clause so as to clearly indicate the intention of the parties to contract conditionally beyond the primary term. Cf. Champlin Refining Co. v. Magnolia Petroleum Co., 178 Okl. 203, 62 P.2d 249; Hicks v. Mid-Kansas Oil & Gas Co., 182 Okl. 61, 76 P.2d 269; Prowant v. Sealy, 77 Okl. 244, 187 P. 235; McClain v. Harper, 1952, 206 Okl. 437, 244 P.2d

2. On June 4, 1958, penetration was made into a gas producing horizon which was confirmed on June 7, 1958, to be the Basal Oil Creek Sand capable of producing oil and gas in paying quantities. On June 10, 1958, a flow test was taken and production was measured for 25 minutes, indicating a rate of approximately 1,330,-000 cubic feet of gas per day with 90 barrels of condensate. The rate of actual production at such flow test was sufficient to pay the cost of operating the well, plus a profit, based upon Corporation Commission allowables.

There was no drilling in this well subsequent to June 9, 1958; condensate from the well was sold between June 21, 1958 and June 25, 1958. The well produces condensate and gas which under Oklahoma law may not be wasted. Pasotex has capped the well pending development of a market for the gas and is now drilling additional wells to establish reserves sufficient to obtain a permanent market for the sale of the gas from the well.

Our consideration of the case requires neither a determination of the completion date nor the issue of whether or not June 10, 1958, was within the primary term.

301. But the lease did provide the right and duty to and upon the lessee to protect the lands by drilling at any and all times during the full extent of the primary term or pay royalties in lieu thereof, a clause indicative of the primary intent of the parties to develop the properties. The right to commence a well during the primary term carries with it, by necessary legal implication, the right to complete the well after expiration of the primary term unless negatived by contract terms or loss by abandonment. Simons v. McDaniel, supra. The liberal rule of the Oklahoma courts has been recently applied in defining the distinction between "commencement" and "completion" leases and in extending the rights of lessees beyond the primary term in order to give by implication every right "which is necessary to the enjoyment of the thing granted." In State ex rel. Commissioners of Land Office v. Carter Oil Company of West Virginia, supra, the court contrasted two leases one of which was "for a term ending February 26, 1955, and as long thereafter as oil, gas, casinghead gasoline or any of them is produced"; the other lease provided for a "term of five years from the date hereof and as long thereafter as oil or gas or either of them is produced in paying quantities * * * provided * * * that unless a producing well in paying quantities of oil or gas is completed on the above described premises within five years from date hereon this lease shall be void." The court termed the first lease a commencement lease allowing the lessee to complete the drilling after the expiration of the primary term. The second lease was held to be a completion lease but carrying with it only the obligation of completing a well capable of producing oil and gas in paying quantities during the primary term.[3]

 In view of these decisions of the state court we have no doubt that the trial court correctly concluded that the departmental lease was a commencement lease and that appellee had complied with its terms allowing an extension beyond the primary term.

The judgment is affirmed.

3. The court was fully cognizant of conflicting authorities. At page 1096, of 336 P.2d the court states:

"The commissioners cite numerous cases from other jurisdictions, which although enlightening, expound a rule in conflict with the decisions of this court. We are in accord with the philosophy of our previous holdings which is reannounced herein."