Archie VAUGHN, Appellant,

v.

Jack L. HEARRELL, Appellee.

Court of Appeals of Kentucky.

June 23, 1961.

Shuffett & Butler, Greensburg, William Branaman, King, Deep & Branaman, Henderson, for appellant.

T. L. Burress, Greensburg, for appellee.

STEWART, Judge.

This case involves the construction of an oil and gas lease executed by appellant, Archie Vaughn, as lessor, which through mesne assignments was acquired by appellee, Jack L. Hearrell. Appellant brought this action in the Green Circuit Court for an adjudication of the question of whether the lease covering his farm had terminated. Based upon the facts as stipulated appellant moved for summary judgment and the trial court held the lease was still valid and in full force and effect.

The questions raised below and renewed before this Court for determination are whether the lease terminated upon the expiration of the six-month primary term, as no oil or gas was produced, or whether, on the other hand, the drilling of a "dry hole" within a specified time, and the subsequent offer of payments of delay rentals under the terms of the lease, have kept the lease alive to the present time.

The term clause of the lease reads:

"It is agreed that this lease shall remain in force for a term of *six months* from this date, and as long thereafter as oil or gas, or either of them, is produced from said land by the lessee." (The underlined phrase was typed into the space left blank on the printed form for that purpose.) The other relevant provisions of the lease read:

"If no well be commenced on said land on or before the 16th day of December, 1958, this lease shall terminate as to both parties, unless the lessee on or before that date shall pay or tender the lessor, or to the lessor's credit in the The Peoples Bank at Greensburg, Ky. or its successors, which shall continue as the depository regardless of changes in the ownership of said land, the sum of $131.00 Dollars, which shall operate as a rental and cover the privilege of deferring the commencement of a well for 3 months from said date. In like manner and upon like payment or tenders the commencement of a well may be further deferred for like period of the same number of months successively. And it is understood and agreed that the consideration first recited herein, the down payment, covers not only the privileges granted to the date which first said rental is payable to aforesaid, but also the lessor's option of extending that period aforesaid, and any and all other rights conferred.

"Should the first well drilled on above described land be a dry hole, then in that event, if a second well is not commenced on said land within twelve months from the expiration of the last rental period which rental has been paid, this lease shall terminate as to both parties, unless the lessee on or before the expiration of said twelve months shall resume the payment of rentals in the same amount and in the same manner as hereinafter provided. And it is agreed that upon the resumption of payments of rentals as above provided, by the last preceding paragraph hereof, governing the payment of rentals and the effect thereof shall continue in force just as though there had been no interruptions in the rental payments."

The lease was dated September 16, 1958, and is on a standard printed form in general use in this state known as "Producers 88." A well was drilled by appellee in November, 1958, and pronounced a "dry hole" in December of that year. On October 15, 1959, appellee tendered $131 to appellant as quarterly rental. The payment was refused, as was the payment tendered on January 16, 1960. No further drilling has taken place since the completion of the "dry hole" in December, 1958. However, compliance with the condition as to payment of delay rentals has been maintained on the part of appellee.

The lease was for a primary term of six months, ending March 16, 1959. It provided that the lessee must drill within the first three months or pay a delay rental to cover the last three months. These time requirements were inserted in the blank spaces provided therefor on the printed form. Everything else, so far as it relates to the problem before us, was a part of the printed Producers 88 form.

■ It appears to be the general rule that the dry-hole and delay-rental clauses of the standard oil and gas lease contract are intended to keep it in force only *within* the primary term. Summers on Oil and Gas, Vol. 2, sec. 302, pp. 278–9, states the rule thus:

> "Extension of the primary term of a lease as created by the habendum clause thereof should not be confused with the extension of the period for delay in the commencement of drilling provided for in the drilling clause. The primary term of a lease cannot be extended by the payment of delay rental or the commencement of drilling operations in the absence of an express provision *in the habendum clause* to that effect. Consequently, agreements extending the time for the commencement of drilling under the drilling clause do not have the effect of extending the primary term of the lease

as fixed by the habendum clause." (Emphasis added.)

This same author in the same treatise in Vol. 2, sec. 351, pp. 482–3, also made this statement on the point under discussion: "The commencement of a well or the payment of delay rental under the provisions of the dry hole clause cannot have the effect of extending the lease beyond the primary term thereof."

In J. J. Fagan & Co. v. Burns, 247 Mich. 674, 226 N.W. 653, 655, 67 A.L.R. 522, speaking of the form of the oil and gas lease known as Producers 88, the court said: " * * * By the great weight of authority, the term clause, * * * dominates the period for which the lease shall run, so that, unless it is properly modified by other provisions, all rights of the lessees cease at the expiration of the fixed time stated in the term clause, except in the one contingency that at the expiration of such time the lessee is actually producing oil and gas on the premises * * *. At the expiration of the fixed time, if there is no production to extend it, the lease ends, not by forfeiture, but by its own terms. * * *"

Though the Michigan case just quoted holds that under a Producers 88 lease it is not enough for the lessee to commence drilling within the primary term, and that the lease terminates at the end of the primary term in the absence of actual production, thus declining to follow Lester v. Mid-South Oil Co., 6 Cir., 296 F. 661, which, in construing a Kentucky lease, held otherwise, certainly that portion of the opinion applicable to the question in this case is sound and correct. It was, in fact, recently cited with approval by this Court in Browning v. Cavanaugh, Ky., 300 S.W.2d 580, 582, following this statement: "The initial fixed term clause of a lease dominates the period for which the lease shall run. The period is not to be extended by 'indirect, ambiguous and negative language in the development clause,' for oil and gas leases in case of ambiguity with respect

to development are construed to be for the benefit of the lessor and against the lessee."

In Freeland v. Edwards, 1957, 11 Ill. 2d 395, 142 N.E.2d 701, 702, a Producers 88 form was used in making a lease for a 60-day primary term. All of the printed delay-rental clause was deleted except for the first portion, reading as follows: "If no well be commenced on said land on or before one year from date hereof, this lease shall terminate as to both parties." The printed dry-hole provision, left intact, provided thus: "Should the first well drilled on the above described land be a dry hole, then, in that event, if a second well is not commenced on said land within twelve months from the expiration of the last rental period for which rental has been paid, this lease shall terminate as to both parties, unless the lessee on or before the expiration of said twelve months shall resume the payment of rentals * * *." A dry hole was drilled within the primary term (as extended by express agreement). Within a year thereafter the lessee commenced a well, resulting in an injunction suit by the lessor and a new lessee being given a contract. The situation was therefore closely comparable with the instant case. In reversing a judgment denying relief the Illinois Supreme Court said:

"We think it clear that the dry-hole clause was not intended to extend the definite term contained in the habendum clause, but rather appears to have been left in the lease by inadvertence, which is evidenced by the one-year provision contained in the unstricken portion of said clause * * *. Because the parties chose to create an extremely short term in the habendum clause, there was no purpose to be served by a delay-rental provision and so it was stricken * * *. The dry-hole and the drilling clause *were ren-*

*dered inapplicable by the short primary term* of the lease. The failure to strike them from the printed form may give rise to an ambiguity, but it cannot alter the clear language of the habendum clause which controls the exploratory period and the indefinite term beyond, for which the lease may be extended by production." (Emphasis added.)

Appellee relies upon Simpson v. Buckner's Adm'r, 247 Ky. 564, 57 S.W.2d 464, to sustain the validity of the lease sued on, and, in truth, the opinion in that case held that performance under the dry-hole and rental provisions would operate to extend the lease indefinitely, in fact, ad infinitum, if the lessee so desires. That case could and should have been decided on the basis of the lessee's having commenced drilling within the primary term. Cf. Lester v. Mid-South Oil Co., supra. The Simpson opinion went far out and gave to the printed dry-hole and delay-rental provisions a literal construction which overrode the primary term and bestowed upon the printed form the same significance as if it had been composed on the spot and had really evolved out of the negotiations of the parties. We conclude that opinion made bad law and ought to be overruled insofar as it goes further than to say that a drilling operation in progress at the end of the primary term holds the lease in force pending the completion of the well.

We believe this case should be decided on the basis of the principle that the fixed term dominates the period for which a lease shall run, and if any other clause is not in harmony with the term clause, and does not purport in words to modify the term clause, then the term clause must prevail.

Wherefore, the judgment is reversed.