Herman LITTLE and wife, Imogene
Little, Movants,

v.

Robert A. PAGE, Respondent.

No. 89–SC–783–DG.

Supreme Court of Kentucky.

June 6, 1991.

Eddie C. Lovelace, Albany, for movants.

Lindsey G. Bell, Burkesville, for respondent.

REYNOLDS, Justice.

This appeal is from a decision of the Court of Appeals which reversed the judgment of the circuit court. The circuit court found that an oil and gas lease terminated on its expiration date since no production had occurred during the primary lease term so as to extend it.

On January 8, 1981, Herman Little and wife, Imogene Little, as lessors, executed an oil and gas lease on their ten and 20–¾ acre tracts of land in Clinton County, Kentucky, to James L. Tabb and Donald L. Kessler, as lessees. The instrument is referred to as a Kentucky 88–Gas Provision Agreement, which recited that its sole purpose was for the mining and operating for oil and gas, to produce, save and take care of the said products. The lease was to remain in force for a term of one year and as long thereafter as oil and gas, or either of them, was produced from the land by the lessees. The parties had modified the instrument with a drill-or-pay commitment provision which required the drilling of a well within 90 days or the payment of $2,000 to lessors and a well was timely drilled.

On January 20, 1981, the lessees assigned to Robert A. Page, respondent, an overriding royalty interest in the lease for the apparent consideration of assistance in obtaining the lease and a transfer of interest in a separate oil and gas lease. The assignment was subject to all terms and limitations of the original lease.

Drilling equipment was moved back onto the premises on January 5 or 6, 1982, and drilling operations began again. A strong showing of gas was encountered on January 7, 1982, and drilling was continued in the same hole when oil was encountered in marketable quantities either January 10th or 11th. Neither before nor during the drilling operation did lessors tell the driller to cease operations, even though the lessors were in a position to observe the lessee's drilling activities. However, on January 29, 1982, the movant, Herman Little, wrote a letter to the lessee, Tabb, requesting him to cease operations and, on the very same day, the Littles executed a second oil and gas lease to Mr. Tabb. The consideration for this latter lease was $2,000 front money and a $\frac{1}{16}$ of $\frac{5}{8}$ of $\frac{7}{8}$ overriding royalty interest plus a landowner's, $\frac{1}{8}$ royalty. There was no reference or inclusion of respondent's overriding royalty. No production resulted by reason of drilling conducted after the date of the second lease, but marketable production was achieved from the well in which oil was discovered on January 10th or 11th.

The trial court, following a bench trial, entered judgment for lessors and concluded that the January 8, 1981, lease terminated on its expiration date of January 7, 1982, as no production had resulted during the primary term of the aforementioned lease and there was a lack of evidence that lessors' actions or passivity extended the term by reason of the drilling activities.

Thus, in the absence of an express provision in the oil and gas lease, did the commencement of drilling, within the primary term, keep the lease in force pending completion of the well, or, stated in the alternative, was the lessee entitled, under the terms of the contract, to longer hold the lease?

Movants maintain the Court of Appeals was in error in determining that the primary term of the lease was extended by commencement of drilling operations near the termination date of the lease and distinguish *Lester v. Mid–South Oil Co.*, 296 F. 661 (6th Cir.1924); *Hicks v. Mid–Kansas Oil & Gas Co.*, 182 Okl. 61, 76 P.2d 269

(1938); and *Vaughn v. Hearrell*, Ky., 347 S.W.2d 542 (1961).

A situation with a lease of similar terms and facts has not heretofore been presented to this Court and the cases cited by counsel may be distinguished by the clauses/provisions of the respective leases. Movants make reference to *Summers Oil and Gas*, Volume 2, p. 128, and *The Law Of Oil And Gas Leases*, Brown 2d edition, § 5.04 (1987), to buttress their argument that most state courts rigidly hold that production must be obtained before the expiration of the primary term in order to continue the lease in force and where the lease itself provided that it shall continue in force for a certain term of years and as long thereafter as oil and gas are produced.

Kentucky, to the contrary, has demonstrated a reasoned fairness, and it has been stated that as a matter of public policy which looks to the facilitation of development work in oil and gas and other minerals, a lessee, who in good faith is prosecuting work for development with reasonable diligence, will be protected against cancellation of his lease. *Reynolds v. White Plains Oil & Gas Company*, 199 Ky. 243, 250 S.W. 975 (1923).

In a case where on the termination date the lessee had discovered oil at a shallow level and drilled to deeper sand and upon no showing of oil therein discontinued his operations for the winter and did not resume operations the following spring, it was held that there was production under provisions of the lease. *Hutchinson v. Schneeberger*, Ky., 374 S.W.2d 483 (1964). Accordingly, the Kentucky courts have made reference to the reasoning and holdings of the Oklahoma courts. Oklahoma has favored an interpretation of lease rights as will favor development and permit completion of a well rightfully commenced. *Moncrief v. Pasotex Petroleum Co.*, 280 F.2d 235 (10th Cir.1960).

■ In this case the lease did not contain a provision that the commencement of drilling within the primary term kept the lease in force pending completion of the well. The primary purpose of this Kentucky 88–Gas Provision Lease is for the express pur-

pose of mining and operating for oil and gas. The lease did not provide that production must be had within the primary term or it would be rendered null and void. The lack or failure of actual production would, in some jurisdictions, result in termination of the lease by virtue of its own terms even with drilling operations commenced. This harsh provision is not always acceptable as has been demonstrated in some Texas and West Virginia cases. The uncertainty and vagaries attendant to commencement and drilling and with an effort to assure completion before the expiration of a lease adds to the risk which may result in lease expiration and economic loss. The forms of leases which provide a commencing-operations clause minimize the hazard aforesaid.

■ The Court of Appeals rationalized that the rule enunciated in *Lester v. Mid–South Oil Co., supra,* which had relied upon the earlier case of *Hicks v. Mid–Kansas Oil & Gas Co., supra,* as stating Oklahoma law to be that "[t]he right to commence a well during the primary term carries with it, by necessary legal implication, the right to complete the well after expiration of the primary term unless negatived by contract terms or loss by abandonment." *Moncrief v. Pasotex Petroleum Co., supra.* We concur that the law in this jurisdiction is the same as that of Oklahoma. Thus, the rule is that a well commenced during the primary term may be completed after expiration of the term. We find this view to have been expressed in *Vaughn v. Hearrell, supra,* wherein the court noted that the term clause of an oil and gas lease dictates the period for which the lease shall run, unless the clause is properly modified by another lease provision. The lease form in *Vaughn, supra,* contained both a delay rental clause and a dry hole clause, which are intended to keep the lease in force only within the primary term. *Vaughn* overruled so much of *Simpson v. Buckner's Adm'r,* 247 Ky. 564, 57 S.W.2d 464 (1933), as held that those clauses would extend the primary terms of the lease. The case involved an instrument that did not contain a commencing-opera-

tion clause. In *Vaughn,* 347 S.W.2d at 545, it was stated:

Appellee relies upon *Simpson v. Buckner's Adm'r,* 247 Ky. 564, 57 S.W.2d 464, to sustain the validity of the lease sued on, and, in truth, the opinion in that case held that performance under the dry-hole and rental provisions would operate to extend the lease indefinitely, in fact, ad infinitum, if the lessee so desires. That case could and should have been decided on the basis of the lessee's having commenced drilling within the primary term. *Cf. Lester v. Mid–South Oil Co., supra.* The *Simpson* opinion went far out and gave to the printed dry-hole and delay-rental provisions a literal construction which overrode the primary term and bestowed upon the printed form the same significance as if it had been composed on the spot and had really evolved out of the negotiations of the parties. *We conclude that opinion made bad law and ought to be overruled insofar as it goes further than to say that a drilling operation in progress at the end of the primary term holds the lease in force pending the completion of the well.* (Emphasis added.)

We concur with the decision of the Court of Appeals in that the circuit court was incorrect in determining the January 8, 1981, lease to be invalid.

■ The judgment of the trial court following its bench trial recognized that the issue of estoppel had been presented without objection. Under the specific facts of this case we hold that the doctrine was applicable. CR 8.03, CR 15.02, and *Bailey v. Thompson,* Ky., 300 S.W.2d 235 (1957).

While forfeitures are not generally favored by the law, forfeitures which arise in gas and oil leases are rather favored because of the peculiar character of the product to be produced.

In this case the trial court found that a strong showing of gas was encountered during the drilling operation on January 7, 1982, at an approximate depth of 450–500 feet and that the drilling continued without any interruption or protest from lessors.

Oil was encountered in marketable quantities, about January 10th or 11th.

Initially, the lessees drilled a well within 90 days of the execution of the lease. No production of oil was shown to have occurred, but an inserted term in the lease provided that should gas be discovered and not commercial oil, lessees agreed to leave the casing in subject well and cap same for use by lessors as a domestic gas well. The record discloses that this first well had been assigned by lessees to the lessors.

In view of the trial court's findings, we believe the movants should not be heard to say that they did not consent to the development work by the lessee nor be allowed to claim or have a forfeiture of the lease because to do so would be contrary to the fundamental principles of equitable estoppel. *Cadillac Oil & Gas Co. v. Harrison*, 196 Ky. 290, 244 S.W. 669 (1922); *Reynolds v. White Plains Oil & Gas Co., supra.* The demand for the execution of a second lease did not occur until after oil production occurred. The record demonstrates that front money and overriding royalties, in addition to the landowners' royalty, were demanded and given with no requirement of additional drilling. The subsequent lease was based on production.

The decision of the Court of Appeals is affirmed and this cause is remanded to the circuit court for proceedings consistent with this opinion.

STEPHENS, C.J., and COMBS, LEIBSON and WINTERSHEIMER, JJ., concur.

SPAIN, J., dissents by separate opinion, in which LAMBERT, J., joins.

SPAIN, Justice, dissenting.

Respectfully, I dissent. The trial court was correct when it held that the lease terminated on its expiration date of January 7, 1982, as no production had resulted during its primary term. The decision of the majority has the effect of rewriting the contract and adding a condition which the lessor and lessee did not intend to include in their agreement at the time of their entering into the lease.

The oil and gas lease form utilized by the lessee in his drafting of the agreement was a Kentucky 88–Gas Provision Agreement. This lease varies from the Producer's 88 lease form widely used throughout the oil and gas industry. *See* A.W. Walker, *Defects and Ambiguities in Oil and Gas Leases*, 28 Tex.L.Rev. 895 (1950). The most significant difference, for our purposes, is the "drilling" or "commencement" clause which is commonly found in a Producer's 88 lease. The drilling clause generally states that "... if a ... well is not commenced on said land within twelve months from the expiration of the last period which rental has been paid this lease shall terminate as to both parties...." *McVicker v. Horn, Robinson and Nathan*, Okla., 322 P.2d 410, 412 (1958). The effect of the clause on an oil and gas lease is to extend its primary term so that the lessee shall have the right, once a well is commenced, to continue to drill such well to completion with reasonable diligence and dispatch, and if oil and gas, or either, is found in paying quantities, the lease is then continued in force. *See, e.g., Gasaway v. Pendergrass*, Ky., 350 S.W.2d 460 (1961). However, the lessee, in his drafting of the Kentucky 88 gas lease, did not include such drilling clause. The Little–Kessler lease provided solely that the lease would remain in force for one year "and as long thereafter as oil or gas ... is *produced* from said land by the lessee." (Emphasis ours.) Thus, by its expressed terms, no extension of the lease beyond its primary term was permitted unless production was had by the lessee or his assigns during the primary term.

The Oklahoma Supreme Court stated in *McVicker* that "[t]he great weight of authority ... appears to be in harmony with the view that actual production during the primary term is essential to the extension of the lease beyond that fixed term. This, at least, is true *unless the lease contains some additional provisions indicating an intent to extend the right to produce beyond the primary term.*" *McVicker, supra* at 413. (Emphasis in original.)

*Summers, Oil and Gas,* Vol. 2, p. 128, comments and addresses the issue before the Court of whether drilling on the property during the primary term extends the term of the lease where the lease does not contain a drilling clause and no production is found:

> *A great majority of the courts* have ... held that where a lease provided that it shall continue for a definite term of years, and as long thereafter as oil or gas is found, discovered, obtained or *produced,* using these terms singly or in combinations, to continue the lease beyond the definite term *the lessee must actually find and produce oil or gas in paying quantities during the definite term.* (Emphasis added.)

Support for lessors' argument that production, and not drilling, is the essential condition required to extend the term of this lease beyond its primary term, can be found in Brown, *The Law of Oil and Gas Leases,* section 5.04 (1987):

> *Most of the courts* in different states have held that where a lease provided that it shall continue in force for a certain term of years and as long thereafter as oil or gas is produced from the land, *production must be obtained before the expiration of the primary term in order to continue the lease in force.* (Emphasis added.)

A written contract is to be construed from the standpoint of the parties and the terms employed must be given effect from that standpoint. *Collings v. Scheen,* Ky., 415 S.W.2d 589 (1967). The fairness of the contract is of no concern to the court, which has no power to make a new contract for the parties. *Columbia Gas Const. Co. v. Holbrook,* 81 F.2d 417 (6th Cir.1936)

(applying Kentucky law). It is not the function of this Court to change obligations of a contract which the parties have made, nor to add a condition which was not written into the original contract. *White v. Winchester Land Development Corp.,* Ky. App., 584 S.W.2d 56 (1979). In construing a contract, the court must find out the intention of the parties and ascertain how they meant the contract to operate at the time they entered into it. *Wilcox v. Wilcox,* Ky., 406 S.W.2d 152 (1966). Finally, an instrument should be construed against the party who drafted it. *Southern Bell Tel. & Tel. Co. v. Chappelle,* Ky., 415 S.W.2d 826 (1967).

By applying these principles, it is apparent that the parties intended that production be had during the primary term of the lease, and that the mere act of drilling on the property would not extend the lease beyond its primary term. The failure of the assignee to produce oil or gas during the primary term of the lease was fatal to his right to remain and drill on the Little property. Finally, the delay of the Littles to request the assignee to stop drilling until three weeks after the expiration of the lease did not rise to the level of estoppel because there was no detrimental reliance or damage to the assignee. *Bailey v. Thompson,* Ky., 300 S.W.2d 235 (1957).

LAMBERT, J., joins in this dissenting opinion.